UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANU KAJI SANJEL<br><br>Plaintiff<br><br>-against-<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, A government agency.<br><br>Defendant | <br><br><br>Civil Action No. 1:19-cv-10347-LTS-DCF<br><br>PLAINTIFF'S ANSWERING MEMORANDUM TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT |

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**…………………………………………………………1

**TABLE OF EXHIBITS**…………………………………………………………………5

**ARGUMENT**……………………………………………………………………………6

    **1.  Since Mr. Sanjel maintains that he does not have a removal order, 8 U.S.C. § 1252(a)(5) doesn't apply**………………………………………………………**6**

        *a.  In any event, the USCIS' claim that Mr. Sajel is subject to a removal order is bereft of any colorable authority*………………………………………………...*9*

    **2.  Regardless of whether Mr. Sanjel is an arriving alien, the USCIS has jurisdiction over his I-485 because his departure from the U.S. terminated his removal proceedings.** …………………………………………………………………**16**

    *a.  Binding BIA precedent establishes that Saju Sanjel is an arriving alien*………………..*17*

**CONCLUSION**…………………………………………………………………………**18**

## TABLE OF AUTHORITIES

UNITED STATES CODE

8 U.S.C. § 1101(g)……………………………………………………………6,7,9,13,14

8 U.S.C. § 1101(g)(2015)…………………………………………………………………..6

8 U.S.C. § 1229b(a)(2)………………………………………………………………………14

8 U.S.C. § 1252(a)(5)…………………………………………………………………7,8,9,18

8 U.S.C. § 1254a(f)(3)……………………………………………………………………...10

8 U.S.C. § 1254(f)(4)………………………………………………………………………15

8 U.S.C. § 1255 ……………………………………………………………………………15

8 U.S.C. § 1258 ……………………………………………………………………………15

28 U.S.C. § 2241……………………………………………………………………………7

STATUTES BY POPULAR NAME

Real ID Act……………………………………………………………………………….7,8

Miscellaneous and Technical Immigration and Naturalization Amendments of 1991
 ("MTINA") Pub. L. 102-232, § 304(c)(1)(A)(1991)……………………………...10,12,13,14,15

CODE OF FEDERAL REGULATIONS

8 C.F.R. § 1.1(q)………………………………………………………………………...18

8 C.F.R. § 245.2(a)(1)………………………………………………………………….16,17

8 C.F.R. § 1242.17 (2015)………………………………………………………………….6

8 C.F.R. § 1245.1(c)(8)(ii) ……………………………………………………………..16,17

8 C.F.R. § 1245.2(a)(1)………………………………………………………………….16

FEDERAL COURT DECISIONS

*Auer v. Robbins*, 519 U.S. 452, 461 (1997)……………………………………………..18

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988)………….…………………………11

*Bowles* v. *Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)……………………………………18

*Brimstone R. Co.* v. *United States*, 276 U.S. 104 (1928)………………………………………..11

*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)……………………………………..…………12

*Claridge Apartments Co.* v. *Commissioner*, 323 U.S. 141 (1944)……………………………...11

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612  (2018)……………………………………………12

*FAA v. Cooper*, 566 U.S. 284  (2012)……...……………………………………………...14

*Gonzalez v. Mayorkas*, 2014 WL 585863 (E.D.V.A. Feb. 12, 2014)………………………..17,18


*Greene* v. *United States*, 376 U.S. 149 (1964)…………………………………………………11

*Kumarasamy v. Att'y Gen.*, 453 F.3d 169 (3d Cir. 2006)……………………………………7,8,9

*Madu v. United States AG*, 470 F.3d 1362 (11th Cir. 2006)……………..……………………7,9

*Miller* v. *United States*, 294 U.S. 435 (1935)……………………………………………...11

*Molzof* v. *United States*, 502 U.S. 301 (1992)………………………………………………..14

*Morissette* v. *United States*, 342 U.S. 246 (1952) …………………………………………...14

*Nat'l Ass'n Of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007) ………………………12

*Nicusor-Remus v. Sessions*, 902 F.3d 895 (9th Cir. 2018)……………………………………….6

*NLRB v. Alt. Entm't, Inc*., 858 F.3d 393 (6th Cir. 2017) (Opinion of Sutton, J.)………………...12


*Patel v. Ashcroft*, 294 F.3d 465 (3d Cir. 2002)………………………………………………...8

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976)………………………………………13

*Robertson* v. *Methow Valley Citizens Council*, 490 U.S. 332 (1989)…………………………..18

*Rowan Cos.* v. *United States*, 452 U.S. 247 (1981)…………………………………………..14

*St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772 (1981)………………12

*United States* v. *Magnolia Petroleum Co.*, 276 U.S. 160 (1928)………………...……………..11

*Watt v. Alaska*, 451 U.S. 259, 267 (1981)……………………………………………………12

EXCERPTS FROM FEDERAL LITIGATION

*Galindo Gomez v. USCIS*, Case 1:19-cv-03456-ABJ, U.S.D.C. for D.C., ECF Doc. 17……… 11

PUBLISHED BIA DECISIONS

*Matter of BLANCAS-Lara* , 23 I. & N. Dec. 458 (B.I.A. June 10, 2002)……………………14,15

*Matter of Bulnes-Nolasco*, 25 I. & N. Dec. 57  (B.I.A. July 23, 2009)…………………………..6

*Matter of Oseiwusu*, 22 I. & N. Dec. 19  (B.I.A. March 25, 1998)…………..…………………17

*Matter of Palma*, 14 I. & N. Dec. 486 (BIA 1973)…………………………………………6,11

POLICY MATERIALS

Adjudicator's Field Manual (2020)………………………………………………………...9,16

Adjudicator's Field Manual  § 3.4 (2020) (Exhibit C)………………………………………...6

Adjudicator's Field Manual  § 54.2 (Exhibit B) (2020)………………………………………6

Lawrence J. Weinig, Acting Associate Commissioner, HQEXM, Legal Opinion Your CO
1810.6-C Memorandum of September 15, 1992: Travel Permission for Temporary
 Protected Status (TPS) Registrants, 1993 WL 1503998, *1 (Aug. 4, 1993)…………………...10

*Retention of EB–1, EB–2, and EB–3 Immigrant Workers and Program Improvements*
*Affecting High-Skilled Nonimmigrant Workers* : U.S. Citizenship and Immigration
 Services, 81 FR 82416 (November 18, 2016)……………………………………………………11

USCIS Policy Manual, Volume 7, Chapter 3, Section D  Footnote 19…………………………12

USCIS Stakeholder's Message (Exhibit A)……………………………………………………6

USCIS, Update on Travel by Temporary Protected Status Beneficiaries In Removal
Proceedings, (Dec. 20, 2019), available at https://www.uscis.gov/news/alerts
/update-on-travel-by-temporary-protected-status-beneficiaries-in-removal-proceedings
……………………………………………………………………………………10,12,14,15,17

**TABLE OF EXHIBITS**

A.  USCIS Stakeholder's Message

B.  Adjudicator's Field Manual  § 54.2

C.  Adjudicator's Field Manual  § 3.4

**ARGUMENT**

**3.   Since Mr. Sanjel maintains that he does not have a removal order, 8 U.S.C. § 1252(a)(5) doesn't apply**

USCIS claims that "Plaintiff's Complaint Is an Indirect Challenge to His Removal Order" ECF No. 15 at 9. This is incorrect. Mr. Sanjel is not challenging his removal order, directly or indirectly, because there is no removal order  to be reviewed, inasmuch as his having left the United States in 2015 under a removal order executed it. 8 U.S.C. § 1101(g)(2015); 8 C.F.R. § 1242.17 (2015); *Matter of Bulnes-Nolasco*, 25 I. & N. Dec. 57,58 (B.I.A. July 23, 2009), *Matter of Palma*, 14 I. & N. Dec. 486, 487 (BIA 1973). Once the removal order is executed, it ceases to exist. *Nicusor-Remus v. Sessions*, 902 F.3d 895, 900 (9th Cir. 2018) ("We conclude that Nicusor executed the 2002 removal order when he departed the United States in 2004. Because there is no final removal order in this case, this Court lacks jurisdiction to hear Nicusor's petition."). This is true even though Mr. Sanjel was granted advance parole prior to his departure. "If an alien who is the subject of an outstanding order of removal departs from the U.S., even with an advance parole, he or she effects the order (i.e., self-deports). See section 101(g) of the Act." Adjudicator's Field Manual  § 54.2[1].

Even if the USCIS disagrees that Mr. Sanjel leaving the U.S. executed his removal order,[2] it doesn't matter because 8 U.S.C. § 1252(a)(5) does not apply where, as here, the plaintiff maintains that he has no removal order to review, even if the government disagrees.

---

[1] As noted the Adjudicator's Field Manual, at least prior to its incorporation in the USCIS Policy Manual was binding on all USCIS officers. AFM § 3.4. This  incorporation did not occur until May 21, 2020, so the contents of AFM were binding policy materials at least until that date. See the attached Exhibit. Specifically, it was binding on the USCIS when Mr. Sanjel was paroled into the U.S. in 2015, and so controls the treatment of his entry for immigration purposes.
[2] Although, as will be shown, it has no authority to support its claim.

*Madu v. United States AG*, 470 F.3d 1362, 1363 (11th Cir. 2006), *Kumarasamy v. Att'y Gen.*, 453 F.3d 169, 172 (3d Cir. 2006).

   *Madu* is on all fours with the instant matter. In *Madu* the petitioner was given a grant of voluntary departure and claimed to have departed from the United States in a timely manner, Subsequently he reentered without inspection and was detained because the DHS rejected his claimed that he had departed timely, and maintained that he either left after the voluntary departure order expired (converting it to a removal order) or not at all.. Mr. Madu then filed a habeas corpus petition claiming he was being held illegally pursuant to a non-existent removal order. The Real ID Act was adopted while the petition was pending and the district court granted the government's motion to transfer his petition to the 11th Circuit Court of Appeals to be treated as a petition for review pursuant to 8 U.S.C. § 1252(a)(5). The court however ruled that the transfer was improper because Madu's argument that there is no removal order against him at all is not a request to review a removal order and therefore § 1252(a)(5) did not apply. The court opined that:

> Here, Madu argues that he left the United States by the deadline set forth in the IJ's voluntary departure order, and that, as a result, the voluntary departure order never became a removal order. Accordingly, the question presented by Madu's habeas petition is whether there is a removal order at all, which, as the Third Circuit explained in *Kumarasamy*, is a different question than whether an extant removal order is lawful. *See id.* Because we find that Madu does not challenge "a final administrative order of removal" or seek review of a removal order, neither section 106(c) nor section 1252(a)(5) apply to this case. Consequently, we lack jurisdiction, and the district court retains jurisdiction under 28 U.S.C. § 2241 to hear Madu's habeas petition.
>
> *Madu,* 470 F.3d at 1367.

   The instant case is *Madu* to a "T". Here as in *Madu,* Mr. Sanjel is arguing that there is no removal order against him because his leaving the U.S. executed it under § 1101(g). Here, as in *Madu,* the government denies it, but here again as in *Madu* it simply doesn't matter. § 1252(a)(5)

only applies to actions seeking the review of removal orders, not to those disputing that a removal order even exists.

*Kumarasamy* is much the same. In *Kumarasamy,* a Sri Lankan national was granted withholding of removal from Sri Lanka. Subsequently, without giving notice to Mr. Kumarasamy or his attorney, the DHS successfully moved the immigration court to order him removed to Canada, and then executed the order. Mr. Kumarasamy brought a habeas corpus petition in district court challenging his removal on the grounds that it was unlawful, which the court dismissed because he was not in custody. Mr. Kumarasamy appealed the decision. Meanwhile Congress enacted the Real ID Act, including 8 U.S.C. § 1252(a)(5). Therefore, the government argued  that the REAL ID Act applied, and that the court of appeals must treat the appeal as a petition for review. The court disagreed because Mr. Kumarasamy wasn't seeking review of a removal order but, rather, was disputing its existence:

> Kumarasamy is not seeking review of an order of removal. Rather, he claims that his deportation was illegal because there was *no* order of removal. Even after receiving a copy of the amended order, Kumarasamy continues to assert that "[t]he heart of [his] Habeas Petition is that there was no such order of removal." (Appellant's Reply Br.  at 2.) He contends that this assertion insulates his appeal from the purview of the REAL ID Act, under which a petition for review is "the sole and exclusive means for judicial review *of an order of removal*." 8 U.S.C. § 1252(a)(5) (emphasis added). This, we note, is one of those cases in which examination of the jurisdictional element requires us to determine whether, and to what extent, review is sought of the merits. *See Patel v. Ashcroft*, 294 F.3d 465, 468 (3d Cir. 2002) (describing the judicial inquiry as a "backdoor merits inquiry because the former supplies the answer for the later"), *superseded by statute on other grounds*. Under the REAL ID Act, by its own terms, we have jurisdiction only in those cases in which the petitioner seeks review of a final order of removal. Here, Kumarasamy is not arguing that if the removal order in his case was validly issued, that order does not lawfully authorize his removal from the United States -- he is not, in other words, seeking review *of* a removal order. Instead, Kumarasamy is arguing that his removal was improper because there was no removal order at all (even though, of course, one was issued, albeit belatedly).

*Id.* at 172.

Similarly, again, Mr. Sanjel is not seeking review of an order of removal. Rather, like Mr. Kumarasamy, he maintains that this court has jurisdiction because there is no order of removal at all, inasmuch as it was executed when he left the U.S. § 1101(g).

None of the plethora of cases cited by the government are to the contrary. None of them hold that § 1252(a)(5) applies where, as here, the plaintiff maintains there is no removal order to review. Therefore the claim that this action is barred by § 1252(a)(5) is meritless.

> b. *In any event, the USCIS' claim that Mr. Sajel is subject to a removal order is bereft of any colorable authority.*

Both *Madu* and *Kumarasamy* hold that it is enough that one dispute the existence of a removal order to defeat the § 1252(a)(5) bar. But even if the court were required to actually find the non-existence of a removal order to determine that this section does not apply, there is an overwhelming basis for it to do so here. As shown about, the statute, the regulations, published BIA precedents and even the USCIS' own Adjudicator's Field Manual all provide that leaving the U.S. under a removal order executes it. By contrast, the government, even though it was twice informed in writing that the plaintiff would be arguing that section § 1252(a)(5) did not apply because Mr. Sanjel's leaving executed his removal order, has failed to provide any applicable authority that this in fact is not the case.

It is noteworthy that the USCIS does not dispute, at least for the purposes of this motion, that Mr. Sanjel's exit from the United States pursuant to a grant of advance parole constitutes a departure. Quite the contrary, it forthrightly admits that "(o)n September 16, 2015, plaintiff departed the United States pursuant to a grant of advance parole issued in connection with his TPS.  Id. ¶ 13." ECF Doc. 15 at 7. Nevertheless, and despite the plain language of the statute, the regulations, at least two BIA precedent decisions and the Adjudicator's Field

Manual, the agency still insists that Mr. Sanjel's departure did not execute his removal order, arguing that:

> because Plaintiff obtained an advance parole document based on a grant of Temporary Protected Status ("TPS") before he departed, that final order of removal was not executed when he departed in 2015 and Plaintiff remains subject to that order.

ECF Doc. 15 at 6-7.

The USCIS subsequently elaborated as follows:

> However, the TPS-specific provisions allow an alien to travel without these consequences. See 8 U.S.C. § 1254a(f)(3) (providing that an alien with TPS "may travel abroad with prior consent of the Attorney General"). The Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA") govern the travel of aliens with TPS. Specifically, MTINA provides that a TPS beneficiary who travels and returns with authorization from the Attorney General, barring certain crimes, "shall be inspected and admitted in the same immigration status the alien had at the time of departure." Pub. L. 102-232, § 304(c)(1)(A) (1991); see also Lawrence J. Weinig, Acting Associate Commissioner, HQEXM, Legal Opinion Your CO 1810.6-C Memorandum of September 15, 1992: Travel Permission for Temporary Protected Status (TPS) Registrants, 1993 WL 1503998, *1 (Aug. 4, 1993); USCIS, Update on Travel by Temporary Protected Status Beneficiaries In Removal Proceedings, (Dec. 20, 2019), available at https://www.uscis.gov/news/alerts/update-on-travel-by-temporary-protected-status-beneficiaries-in-removal-proceedings ("TPS beneficiaries in removal proceedings who travel abroad not have jurisdiction to adjudicate his adjustment application temporarily with the authorization of DHS remain subject to those removal proceedings. If they are under a final order of removal, the travel does not execute or fulfill the order. The alien in question remains subject to the removal order. . . . By statute, upon return to the United States with TPS travel authorization, TPS beneficiaries retain the same immigration status they held before departing the United States."). *Id* at 15-16

None of the authorities cited by the agency actually support its point.

First, nothing in the MTINA provides that departing the U.S. with advance parole does not execute a removal order. Neither did the 1992 Weinig memorandum.[3] Further, the 2019

---

[3] Stating that "an alien who is a TPS registrant, but also the subject of an order to show cause, will upon return to the United States remain subject to deportation for the same reasons as existed prior to his or her departure" does not address the issue of whether the departure executes a removal order. It should be presumed that Mr. Weinig was well aware at that time that both the Immigration and Nationality Act, and that BIA precedent had so held since at least 1973. Continued in the footer of the next page.

USCIS memorandum referenced by the government was published over 4 years after Mr. Sanjel executed his removal order by departing the United States. "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. *E. g., Greene* v. *United States*, 376 U.S. 149, 160 (1964); *Claridge Apartments Co.* v. *Commissioner*, 323 U.S. 141, 164  [**472]  (1944); *Miller* v. *United States*, 294 U.S. 435, 439 (1935); *United States* v. *Magnolia Petroleum Co.*, 276 U.S. 160, 162-163 (1928). By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms. See *Brimstone R. Co.* v. *United States*, 276 U.S. 104, 122 (1928) ("The power to require readjustments for the past is drastic. It . . . ought not to be extended so as to permit unreasonably harsh action without very plain words"). Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-09 (1988).

The USCIS itself has recently indicated it's agreement with this decision, commenting in a rulemaking that "(g)enerally, there is a presumption against retroactive application of new regulations. *Cf. Bowen* v. *Georgetown Univ. Hosp.,* 488 U.S. 204 (1988)." *Retention of EB–1, EB–2, and EB–3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers*  : U.S. Citizenship and Immigration Services, 81 FR 82416 (November 18, 2016). This is why the USCIS itself has argued elsewhere that the 2019 USCIS Memorandum has no relevance where, as here, the TPS registrant was denied adjustment of status prior to its publication. *Galindo Gomez v. USCIS*, Case 1:19-cv-03456-ABJ, U.S.D.C. for

---

*Matter of Palma*, *supra*. Therefore if he had intended to contradict such longstanding, binding authority, he certainly would have expressly said so.

D.C., ECF Doc. 17 at 10-11 ("Given that Footnote 19 did not even exist when USCIS denied

Plaintiff's adjustment application, Plaintiff's alleged  injury cannot be traced to Footnote 19.)".[4]

Finally, although the MTINA says no such thing, even if it could somehow be construed

to provide that a TPS registrant's departure under a grant of advance parole did not execute a

removal order, the construction would need to be rejected  due to the very strong presumption

against implied repeal (or amendment) of existing laws.  The Supreme Court has held that it

"cannot conclude that a later statute impliedly repeals an earlier one unless 'the intention of the

legislature to repeal [is] clear and manifest.'" *Nat'l Ass'n Of Home Builders v. Defs. of Wildlife*,

551 U.S. 644, 662 (alterations in original)  (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)).

This same rule applies to an implied amendment. *St. Martin Evangelical Lutheran Church v.*

*South Dakota,* 451 U.S. 772, 788 (1981).[5]

Accordingly, the Supreme Court has adopted an extremely difficult test of implied repeal

or amendment, which is seldom satisfied:

> We will not infer a statutory repeal unless the later statute 'expressly contradict[s] the
> original act'" or unless such a construction "is absolutely necessary . . . In order that [the]
> words [of the   later statute] shall have any meaning at all."

> *Nat'l Ass'n of Home Builders*, 551 U.S. at 662  (emphasis supplied).

---

[4] The USCIS' 2019 memorandum was for the purpose of announcing the incorporation of certain
material into the USCIS Policy Manual which became the Footnote 19 to Volume 7, Chapter 3,
Section D referred to by USCIS. *Id.*

[5] The agency has made no claim that its interpretation of the MTINA is entitled to *Chevron*
deference, which is appropriate since it is not in fact ambiguous. However, even if it were, the
canon of construction against repeal or amendment of laws referenced above takes precedence
over *Chevron* deference. "(T)he *Chevron* court explained that deference is not due unless a
'court, employing traditional tools of statutory construction,'  is left with an unresolved
ambiguity. 467 . S., at 843, n. 9, . . .where, as here, the canons supply an answer,
'*Chevron* leaves the stage.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018), *quoting*
*NLRB v. Alt. Entm't, Inc*., 858 F.3d 393, 417 (6th Cir. 2017) (Opinion of Sutton, J.).

Here any argument for implied repeal or amendment entirely fails this stringent test. No portion of the MTINA  expressly contradicts 8 U.S.C. § 1101(g)'s unambiguous command that "For the purposes of this chapter any alien ordered deported or removed … who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed."

Not only does the MTINA not contradict § 1101(g) – it doesn't even allude to it. Nowhere does it have anything to say about what happens to a removal order when a TPS registrant leaves the United States under that order – only that he "shall be inspected and admitted in the same immigration status  the alien had at the time of departure." Pub. L. 102-232, § 304(c)(1)(A) (1991). As will be shown below, this vague language can in no way be strained to support the claim that a TPS registrant who left the U.S. under a removal order returns subject to the same. But even if it could be so construed, it certainly does not "expressly" contradict § 1101(g).  In fact, the only way it does contradict that section is, if when given the reading claimed by the government, the two statutes produce differing results when applied to Mr. Sanjel's situation. However, the Supreme Court has expressly held that a legislative intent to expressly repeal (or amend) a particular statute "is not 'clear and manifest' simply because 'the two statutes produce differing results when applied to the same factual situation.']'*Radzanower v. Touche Ross & Co*., 426 U.S. 148, 155 (1976). "[t]hat," the Court pronounced, "no more than states the problem." *Id.*

Therefore the government's argument can only prevail if it is shown that the referenced language of the MTINA is meaningless unless it repeals or amends  8 U.S.C. § 1101(g) as it applies to TPS registrants who have been granted advance parole. This it cannot do. In fact, as

explained below, the relevant language of the MTINA has a perfectly intuitive and obvious

meaning which in no way contradicts section 1101(g). It means that TPS registrants who depart

the U.S. with USCIS permission will be inspected and admitted as TPS nonimmigrants.

Contrary to the inapplicable 2019 USCIS memorandum, being inspected and admitted in

the same immigration status  the alien had at the time of departure does not, and in fact cannot,

mean that a TPS registrant who had a removal order at the time of departure still has one when

he returns. As the Board of Immigration Appeals recently explained:

> "Status" is a term of art, which is used in the immigration laws in a manner consistent
> with the common legal definition. It denotes someone who possesses a certain legal
> standing, e.g., classification as an immigrant or nonimmigrant. The use of the word "any"
> to modify the word "status" indicates that Congress intended section 240A(a)(2) to
> include admissions of nonimmigrants as well as immigrants. Thus, the plain language of
> section 240A(a)(2)  [requiring, as condition of cancellation of removal, that one "has
> resided in the United States continuously for 7 years after having been admitted in any
> status"] encompasses nonimmigrants admitted to the United States who thereafter reside
> in the United States for at least 7 years.
>
> *Matter of BLANCAS-Lara* , 23 I. & N. Dec. 458, 460 (B.I.A. June 10, 2002) [square
> bracketed words added for clarity]

If "status" is a "term of art" in 8 U.S.C. § 1229b(a)(2),  then it cannot help but being so

when used in other provisions of the INA. "When Congress   employs a term of art, '"'(i)t

presumably knows and adopts the cluster of ideas that were attached to each borrowed word in

the body of learning from which it was taken,'"' *Molzof* v. *United States*, 502 U.S. 301, 307

(1992) (quoting *Morissette* v. *United States*, 342 U.S. 246, 263 (1952))." *FAA v. Cooper*, 566

U.S. 284, 292 (2012). In any event "(i)t would be extraordinary for a Congress …to intend,

without ever saying so, for identical definitions to be interpreted differently." *Rowan Cos. v.*

*United States*, 452 U.S. 247, 257 (1981). This would seem particularly so when the identical

term is used not only in the same Act, but the same Title (II) and even the same Chapter (4) of it.

Therefore, the "legal standing, e.g., classification as an immigrant or nonimmigrant" which Mr. Sanjel possessed when he left the United States with advance parole, and in which he was subsequently inspected and admitted, was Temporary Protected Status. This was "for purposes of adjustment of status under (8 U.S.C. § 1255) and change of status under (8 U.S.C. § 1258), … (a) lawful status as a nonimmigrant." 8 U.S.C. § 1254(f)(4). By contrast, being subject to a removal order cannot be a "status" because it does not denote someone who possesses a classification as an immigrant or nonimmigrant.

In fact, the 2019 USCIS memorandum tacitly concedes this point when it "(c)larifies that generally, a TPS beneficiary who departs and returns to the United States based on authorization to travel remains in the same exact immigration status **and circumstances** as when he or she left the United States." (emphasis added). The USCIS had to add the phrase "and circumstances" because even it couldn't call being subject to a removal order a "status" with a straight face, particularly in light of *BLANCA-Laras*. Thus it attempts to justify making returning TPS registrants subject to the removal orders their leaving the U.S. executed by implicitly referring to being subject to a removal order as a "circumstance", not a status. But by doing so it gave up any pretense to construing the plain language of the MTINA and simply legislated. In any event, in the final analysis, not even the USCIS could bring itself to torture the English language enough to pretend that being subject to a removal order is a "status". And, again, the 2019 memorandum is irrelevant anyway because it is not applicable retroactive to Mr. Sanjel's last leaving the U.S. in 2015.

The claim that Mr. Sanjel's act of leaving the United States after receiving a grant of advance parole did not execute his removal order is contrary to the Immigration and Nationality Act, its implementing regulations, at least two precedent decisions of the Board of Immigration

Appeals and even the USCIS's own binding Adjudicator's Field Manual (at the time Mr. Sanjel

left and reentered the United States, and when his application for adjustment of status was

denied). The argument has no authority supporting it except a memorandum which was

published over 4 years after the relevant events and not only did not purport to be effective

retroactively, but must be presumed not to be. Given that Saju Sanjel's act of leaving the U.S.

executed his removal order, there is no such order for the  review of the denial of his application

for adjustment of status to nullify, and therefore, again, no jurisdictional bar to this action.

2. **Regardless of whether Mr. Sanjel is an arriving alien, the USCIS has jurisdiction over his I-485 because his departure from the U.S. terminated his removal proceedings.**

The USCIS' argument that it does not have jurisdiction over Saju Sanjel's I-485 because

he is not an arriving alien is irrelevant. Even if, contrary to the binding precedent of the Board of

Immigration Appeals, a parolee is not an arriving alien, the USCIS still has jurisdiction over his

I-485 because his removal proceedings have been terminated.

8 C.F.R. § 245.2(a)(1) provides that "USCIS has jurisdiction to adjudicate an application

for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to

adjudicate the application under 8 CFR 1245.2(a)(1)."

Further, 8 C.F.R. § 245.1(c)(8)(ii) provides in relevant part that:

"(t)he period during which the alien is in exclusion, deportation, or removal proceedings, or judicial proceedings relating thereto, terminates:

**(A)** When the alien departs from the United States while an order of exclusion, deportation, or removal is outstanding or before the expiration of the voluntary departure time granted in connection with an alternate order of deportation or removal;

The USCIS does not dispute, at least for the purpose of this motion, that Mr. Sanjel

departed the United States while an order of removal was outstanding. Quite the contrary, it

expressly states that "(o)n May 20, 2011, an immigration judge entered an order of removal

against him for overstaying his admission.  Id. ¶ 11.  … On September 16, 2015, plaintiff

**departed** the United States pursuant to a grant of advance parole issued in connection with his TPS. Id. ¶ 13." ECF Doc. 15 at 7 (emphasis added). Accordingly, it cannot, and does not, dispute, at least in connection with this motion, that Mr. Sanjel's removal proceedings terminated on September 16, 2015. Inasmuch as the immigration judge had no jurisdiction to adjudicate anything pertaining to Mr. Sanjel once his removal proceeding was terminated, the USCIS does in fact have jurisdiction to adjudicate Sanu Sanjel's application for adjustment of status. 8 C.F.R. § 245.2(a)(1).

The only authority the USCIS can cite to the contrary is the 2019 Memorandum, which, again is irrelevant here because it is not effective retroactively. No actually applicable authority holds that departing the U.S. does not terminate removal proceedings. Certainly not *Gonzalez v. Mayorkas*, 2014 WL 585863 (E.D.V.A. Feb. 12, 2014). In *Gonzalez,* there was no claim that the plaintiff's removal proceedings had been terminated, nor any finding by the court that there wasn't. But even if there were, the opinion can hardly stand against the plain language of the regulations, particularly since the court did not address, or even seem to be aware of, the fact that 8 C.F.R. § 245.1(c)(8)(ii)(A) provides that  departing the U.S. under a removal order terminates removal proceedings, or that the USCIS has jurisdiction over an application for adjustment of status when the immigration judge does not.

### D.  Binding BIA precedent establishes that Saju Sanjel is an arriving alien.

In any event, Mr. Sanjel is in fact an arriving alien. As the USCIS itself concedes, at least for the purpose of this motion: "(o)n October 4, 2017 Mr. Sanjel was inspected and paroled into the U.S. as a parolee." ECF Doc. 1 at ¶ 15.  Accordingly, he is an arriving alien under binding BIA precedent. *Matter of Oseiwusu*, 22 I. & N. Dec. 19, 19-20 (B.I.A. March 25, 1998) ( "The

respondent was paroled into the United States upon his arrival pursuant to a grant of advance parole. … Given the fact that the respondent was paroled into the United States, he falls within the definition of an 'arriving alien.'").

Although *Gonzalez* is to the contrary, it is erroneous in that it fails to defer to the BIA's interpretation of 8 C.F.R. § 1.1(q) (defining arriving alien). *Auer v. Robbins*, 519 U.S. 452, 461 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless '""plainly erroneous or inconsistent with the regulation.""' *Robertson* v. *Methow Valley Citizens Council*, 490 U.S. 332, 359, 104 L. Ed. 2d 351, 109 S. Ct. 1835 (1989) (quoting *Bowles* v. *Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 89 L. Ed. 1700, 65 S. Ct. 1215 (1945))"). Needless to say, the *Gonzalez* court, which seemed to be unaware of the Board's interpretation of "arriving alien", did not find it plainly erroneous or inconsistent with the regulation.

But even if one disregards the Board's decision, and concludes that Mr. Sanjel is not an arriving alien, the USCIS still has jurisdiction over his I-485 inasmuch as his removal proceedings have been terminated. The government has cited no applicable authority to the contrary.

**CONCLUSION**

Inasmuch as 8 U.S.C. § 1252(a)(5) does not apply to cases, such as this one, where the plaintiff is not seeking review of a removal order, but rather denies that one exists, and the USCIS certainly has jurisdiction to adjudicate an application for adjustment of status where, as

here, the plaintiff's removal proceedings have been terminated by his departure from the United

States, the Court should deny the government's motion to dismiss as meritless.

Respectfully Submitted this 14th day of September, 2020


/s/ *Michael E. Piston*


Michael E. Piston
Attorney for the Plaintiff
225 Broadway Ste 307
New York, NY 10007
646-845-9895
Fx: 206-770-6350
Michaelpiston4@gmail.com