## Adjudicator's Field Manual

**NOTE: The** USCIS Policy Manual **is our centralized online repository for immigration policies. We are working quickly to update and move material from the Adjudicator's Field Manual to the Policy Manual. Please check that resource, along with our** Policy Memoranda **page, to verify information you find in the Adjudicator's Field Manual. If you have questions or concerns about any discrepancies among these resources, please contact** USCISPolicyManual@uscis.dhs.gov**.**

**Chapter 54 Advance Parole Documents and Boarding Letters.**

54.1    Background.

54.2    Filing and Receipting Procedures.

54.3    Adjudication

54.4    Special Considerations

**54.1 Background.**

**(a) General.** (Chapter 54.1 Revised 06-28-2005).

Parole of an alien into the U.S. pursuant to section **212(d)(5)** of the Act is an extraordinary authority that must be exercised with discretion. It must not be utilized if the case under consideration can be satisfactorily disposed of under any other provision of the Act. (See Chapter 16 of the Inspector's Field Manual.)

There is no separate statutory authority for advance parole. Rather, the use of advance parole is an outgrowth of administrative practice stemming from the general parole authority at section **212(d)(5)** of the Act, and is now incorporated into regulation. The practice of authorization of advance parole has also been recognized by Federal courts. In accordance with the delegations of authority implementing the Homeland Security Act of 2002 (and with the exception of requests for aliens who are authorized parole under SPBP, aliens who are in removal proceedings, and those who are the beneficiaries of a U.S. Congressional private bill, which should be forwarded to the ICE/PHAB), only United States Citizenshi p and Immigration Services (USCIS) has authority to authorize advance parole and issue advance parole documentation.

The advance authorization for parole authorizes the Department of Homeland Security (DHS) to permit an alien to come to the U.S. and enter the country as a parolee. It does not "authorize" his or her departure. Although many aliens seek an advance parole before departing the U.S. in order to have a means of returning so they may continue to pursue a pending application before DHS, most often an adjustment application, it is not the departure which is being authorized, but the parole upon return. We do not p arole people out of the U.S., we can only parole them into the U.S. However, when an advance parole is issued prior to an alien's departure from the U.S., the departure does not result in the alien's application for adjustment of status pending before USCIS being deemed abandoned (see **8 CFR 245.2(a)(4)** regarding effect of departure).

**<u>Note:</u>**

In addition to the section **212(d)(5)** use of the term "parole," the Act also refers to "conditional parole" in section **236(a)** of the Act with regards to DHS's authority to release an arrested alien from custody without first requiring the posting of a delivery bond. A conditional parole should not be confused with an alien being paroled into the U.S. under section **212(d)(5)** of the Act. For a discussion of "conditional parole" under section **236(a)** of the Act, see the Deportation Officer's Field Manual.

(b) Justification,

Every parole authorization must be justified on a case-by-case basis. The justification for any parole under section **212(d)(5)** of the Act must rest on either two statutory provisions (or conceivably, both):

·    Urgent humanitarian reasons - Most paroles fall into this category, whether authorized at a port of entry or in advance of the alien appearing at a port of entry. When authorized in advance, the request for parole must be submitted on Form I-131 and the fee prescribed in **8 CFR 103.7(b)** must be paid (unless the fee is waived pursuant to **8 CFR 103.7(c)** ). When authorized at a port of entry, neither application nor fee is required.

·    Significant public benefit reasons - This type of parole (which is normally referred to by its initials, SPBP) is authorized for an alien who is needed to participate in a law enforcement investigation, prosecution, or other legal proceedings. The initial authorization must be made by the Immigration and Customs Enforcement Parole and Humanitarian Assistance Branch (PHAB) upon a request from a recognized law enforcement entity. After the alien has been paroled into the United States, a re-parole may be auth orized by the local DHS office having jurisdiction over the alien's location in the U.S. for requests initiated by DHS entities. All other extensions are authorized by PHAB. As an adjudicator, you will not be involved in the consideration of this type of parole.

(c) Time of Authorization,

A parole may be authorized in advance of the alien applying for entry, while the alien is applying for entry, or even subsequent to the alien entering the U.S.:

·    In advance of alien who is outside the United States applying for entry ("overseas parole") - This type of parole is normally requested by an alien in his/her own behalf or by another party in the alien's behalf. If requested on the SPBP basis, it may be authorized by PHAB only; if requested for urgent humanitarian reasons, it may be authorized by PHAB or on rare occasions by the DHS overseas office. As an adjudicator, you would only be involved in the adjudication of this type of parole if you are stationed at a DHS overseas office.

·    In advance of an alien departing from the United States, where such alien is an applicant for a benefit and intends to return to the United States in order to pursue that application - Most commonly, this type of

parole authorization is requested (on Form I-131, with fee) for urgent humanitarian reasons by an alien who is an applicant for adjustment in the United States. As an adjudicator, you may be involved in the adjudication of this type of parole request.

·     At time of application for entry ("Port of Entry" parole) - This type of parole is authorized by the designated Bureau of Customs and Border Protection (CBP) official in charge of the port of entry at which the alien is seeking entry. It may not be authorized in advance. As an adjudicator, you will not be involved in the consideration of this type of parole.

**Note:**

A subset of the port of entry parole is the parole for deferred inspection, which is authorized to allow an alien to proceed to a USCIS or CBP office at an onward destination where he or she will present evidence to clear up an easily resolved issue affecting his or her admissibility. A deferred inspection may only be used if the inspecting officer (and his or her appropriate supervisor) has reason to believe that the alien will be admissible to the United States once the issue for which the alien's inspect ion is being deferred has been resolved.

·     Subsequent to entry into the U.S. - As a result of the 1996 amendments to the Act, an alien who is present in the United States without having been inspected and admitted or paroled is considered to be an applicant for admission. In a memorandum dated April 19, 1999, the Commissioner of the INS held that if the Service (now DHS) takes such person into custody and then releases him or her, the action of releasing the alien constitutes a parole under section **212(d)(5)** of the Act (See **Appendix 23-4** ). Note that this does not apply to an alien who is released from custody after having been arrested for any reason other than being present in the U.S. without inspection and admission or parole. As an adjudicator, you would not be involved in the adjudication of this type of parole request.

**54.2 Filing and Receipting Procedures. (Chapter 54.2 Revised 06-28-2005).**

(a) <u>Form.</u>

Form I-131, Application for Travel Document, is used to request advanced parole based upon urgent humanitarian reasons. This same form is also used to request issuance of a reentry permit (see **Chapter 52** of this field manual), or to request issuance of a refugee travel document (see **Chapter 53** of this field manual).

(b) <u>Filing Location and Jurisdiction.</u>

The location at which the application must be filed depends on the situation under which the alien is seeking parole or an advance parole document. As explained in the following chart, the jurisdiction over the application (i.e., the authority to make the decision on the application) depends upon a number of factors, such as:

· The alien's current location;

· The alien's immigration status (if in the U.S.);

· Whether parole is sought at a port of entry (or deferred inspection office) or in advance of the alien arriving at a port of entry (or deferred inspection office);

· The reason for which the alien is seeking parole (i.e., whether it is for urgent humanitarian reasons or for significant public benefit);

· Whether the alien is the beneficiary of a pending private bill;

·     Whether the alien is in removal proceedings, and (if so) on what grounds.

The information identified above are areas of consideration when an applicant or sponsor makes a request to bring an individual(s) into the US. A completed travel document (**I-131**) along with an affidavit of support (**I-130**) and whatever other pertinent supporting documents may be submitted to Parole and Humanitarian Assistance Branch.

| **Situation** | **Filing Location and Form** | **Jurisdiction** |
|---|---|---|
| All situations other than those listed below | Local Bureau of Citizenship and Immigration Services (USCIS) office Form I-131) | Local USCIS office |
| Law enforcement entity is seeking parole, or advance parole authorization, for significant public benefit reasons | Office of International Affairs, Immigration and Customs EnforcementParole and Humanitarian Assistance Branch (PHAB), 425 I Street, NWWashington, DC 20536 (Form I-131 is not used; instead the entity uses a template in accordance with the SPBP Protocol for this purpose. No fee is required for submission of this request by the entity.) | PHAB |
| Alien is currently at a port of entry (or a deferred inspection office), is not admissible to the U.S., and is currently seeking parole into the U.S. | Bureau of Customs and Border Protection (CBP) port of entry station. (Neither form nor fee is required.) | CBP Director of Field Operations (or Deputy DFO or Assistant DFO) designated as having parole jurisdiction over the port of entry. |

| | | |
|---|---|---|
| Alien has been arrested as an alien who is present without admission or parole (i.e., is inadmissible under section **212(a)(6)(A)** ) | Bureau of Immigration and Customs Enforcement (ICE) Office having custody of the alien. (Neither form nor fee is required.) | ICE Director having jurisdiction over office with custody of alien |
| Alien is an applicant for adjustment of status under the Haitian Refugee Immigration Fairness Act of 1998 (HRIFA) | Nebraska Service Center (NSC) (Form I-131) | NSC (unless the NSC has already transferred the application for adjustment to a local office for interview, in which case jurisdiction rests with that local office) |
| Alien is outside the U.S. and is seeking parole in order to come to the U.S. to apply for adjustment of status under HRIFA | NSC (Form I-131) | NSC |
| Alien is a resident of Canada and will seek entry at a port of entry along the Canadian border or through a pre-flight station in Canada. | District office having jurisdiction over the proposed port of entry (Form I-131) | District director having jurisdiction over the POE. **NOTE:** If the person is destined to a different district, the district director having jurisdiction over the intended destination should be consulted prior to adjudication |
| Alien is NOT in the U.S., NOT residing in Canada, and NOT seeking an I-512 in conjunction with the HRIFA program | Office of International Affairs, Parole and Humanitarian Assistance Branch (PHAB) 20 Massachusetts Ave. NW, Washington, DC 20529 (Form I-131) **Note:** under certain circumstances, this parole may also be authorized by an overseas DHS office. | PHAB |
| Alien is in removal proceedings under a ground of inadmissibility | Local office (Form I-131) **Note:** Although the alien may file the Form | USDHS, Immigration and Customs Enforcement, |

| | | |
|---|---|---|
| or deportability and is seeking advance parole to return to the U.S. after traveling abroad. | I-131 at a local office, only Headquarters PHAB can adjudicate the application. | Office of International Affairs, PHAB, 425 I Street, NW Washington, DC 20536 |
| Alien is under an outstanding order of removal (including a deportation order or an exclusion order) and is seeking advance parole to return to the U.S. after traveling abroad. **Note:** If an alien who is the subject of an outstanding order of removal departs from the U.S., even with an advance parole, he or she effects the order (i.e., self-deports. See section **101(g)** of the Act.) | Local office (Form I-131) **Note:** Although the alien may file the Form I-131 at a local office, only Headquarters PHAB can adjudicate the application. | USDHS Office of International Affairs, Immigration and Customs Enforcement, PHAB, 425 I Street, NW Washington, DC 20536 |

The alien who is in removal proceedings will self-deport him/herself if one should depart without prior approval for an advance parole. However, if an advance parole is authorized even under section **101(g)** of the Act, the individual is authorized to return to the US. Section 101(g)

| | | |
|---|---|---|
| Alien is/was an exchange visitor who is subject to the two-year foreign residency requirement | Local USCIS office (Form I-131) **Note:** The former restriction that only Headquarters could consider a parole request by an alien under this situation has been lifted. | Local USCIS office |
| Alien is the subject of a private bill pending in Congress | Local office (Form I-131) **Note:** Although the alien may file the Form I-131 at a local office, only Headquarters can adjudicate the application. | USDHS Office of International Affairs, Immigration and Customs Enforcement, PHAB, 425 I Street, NW Washington, DC 20536 |
| Alien is an applicant for legalization under the provisions of the LIFE Act, is in the U.S., and is seeking permission to travel while his or her legalization application is | | |

pending. **Note:** Although an otherwise qualified alien outside the U.S. may apply from abroad for legalization, such alien **cannot** apply for advance parole <u>based on his or her LIFE Act legalization application.</u> However, he or she could apply from abroad under the same standards and procedures (see above) as any other alien outside the U.S.

**54.3 Adjudication.**

(a) <u>Eligible Classes.</u> Form I-131 may be approved and Form I-512 issued to an alien whose case falls into one or more of the following classes unless reasons of national security or public order dictate otherwise. It is important to note, however, that no alien is "entitled" to a grant of advance parole. Even if an alien is within one of these classes, whether to grant advance parole in an individual case remains a matter entrusted to DHS discretion.

(1) <u>A member of the professions or a person having exceptional ability in the sciences or the arts</u> who, on the basis of prior DHS policy, had been granted voluntary departure prior to April 1, 1997, for the duration of the validity of a third or sixth preference petition approved on his behalf, or to such a member or person who is a Western Hemisphere native and had applied for an immigrant visa and who had been granted voluntary departure prior to April 1, 1997, under that policy, who is going abroad in connection with the qualifying profession, art, or science, or to bring his spouse and children to the U.S., and to the spouse and children of such member or person who are abroad, notwithstanding that the principal beneficiary may have filed an application for adjustment to permanent resident status under section 245 of the Act;

(2) <u>An alien who</u>:

is a Cuban in refugee, parole, or voluntary departure status;

intends to depart temporarily to apply for a U.S. immigrant visa in Canada; and

is in possession of an American consul's letter of invitation to apply

| Note |
|------|
| The Form I-512 issued in such case shall be endorsed to indicate the alien's current status in the U.S. and shall be limited to one trip for the time necessary for its completion. |

(3) <u>An applicant for adjustment of status who</u>:

seeks to depart temporarily from the U.S. for any bona fide business or personal reason when his or her properly-filed adjustment application cannot be completed solely because visa numbers became unavailable subsequent to the application's filing; or

finds it necessary to depart temporarily for emergent personal or bona fide business reasons before a decision can be made on the pending application.

(4) <u>A lawful permanent resident who</u>, prior to embarkation abroad, has applied to a DHS office abroad for a duplicate Form I-551 or for a visa waiver under section 211(b) of the Act, but who, because of emergent conditions, must embark before action can be completed on his application;

(5) <u>An alien who is not an exchange alien subject to the foreign residence requirement</u>, is not the beneficiary of a private bill, and is not under deportation proceedings, in whose case parole has been authorized by the district director because of emergent or humanitarian considerations;

(6) <u>An alien in whose case parole prior to embarkation abroad has been authorized by Headquarters</u>; and

(7) <u>An alien who is a legalization applicant under the provisions of the LIFE Act</u>, is inside the U.S., and is seeking permission to travel abroad and return.

(b) <u>Explanation of "Emergent Personal" and "Bona Fide Business" Reasons</u>. Most requests for advance parole submitted to District Directors will be considered under class (3) above. Class (3) is in two parts:

The first part of class (3) authorizes advance parole for aliens who filed an adjustment application while a visa number was available and whose case cannot be completed solely because a visa number became unavailable. Any bona fide business or personal reason for travel will serve to justify approval of the advance parole request and issuance of Form I-512.

The Associate Commissioner for Examinations, in CO 212.28-C (July 6, 1992), stated:

"This instruction was clearly meant to accommodate the legitimate travel of persons inconvenienced by visa numbers becoming unavailable after they filed adjustment applications. Construction of the term 'bona fide business or personal reason' to require a showing of emergent or extreme need to travel is inappropriate. Accordingly, travel for a bona fide business or personal reason should be considered as travel for any reason <u>which is not contrary to law or public policy</u>." (Emphasis added)

The second part of class three deals with any other adjustment of status application that is pending. Temporary business travel can be authorized for any bona fide reason. However, personal travel must be for emergent reasons.

<u>Webster's Ninth New Collegiate Dictionary</u> (1990) defines emergent as: "a: arising unexpectedly b: calling for prompt action." The ordinary meaning of emergent is something unexpected, or something calling for prompt action, that may or may not rise to the level of being an emergency. The death of an immediate relative is an emergency, while the death of a favorite uncle might only be an event "arising unexpectedly." DHS uses the term "emergent" rather than "emergency," and Adjudicators should be aware of the different meanings for the two terms.

(c) <u>Explanation of "Emergent or Humanitarian Considerations"</u>. Class (5) contains the authority for district directors to authorize parole "because of emergent or humanitarian considerations." This part allows the widest range of discretion. It also requires consideration of an advance parole request that might have been rejected under classes (1) through (4). For instance, an adjustment applicant's sister's long-planned wedding might not be an emergent reason for travel because it did not arise unexpectedly, but

humanitarian consideration may be given to the closeness of the relationship, the planning and expense already incurred, and the length of time the applicant must wait for her adjustment interview due to a backlogged schedule.

(d) Adjudicative Issues [revised 12-23-2010]. Review the entire application, and pay particular attention to the following.

(1) Initial Filing Requirements. DHS or contractor personnel handling receipting of applications should have verified that the initial filing requirements have been met, and the Adjudicator should only have to note that the receipting work was properly done:

The correct filing fee was paid (unless waived pursuant to 8 CFR 103.7(c) ).

The application was signed.

The applications was sent to the office having jurisdiction (see Chapter 54.2(b) ).

(2) DHS and Other Checks.

G-325A checks shall be made unless the file reflects that such checks were previously made or the applicant is a Cuban national in possession of an appointment letter furnished by a U.S. consular officer in Nassau, Bahamas, or Port-of Spain, Trinidad, advising him to apply for Form I-512. However, in the case of an alien departing under emergent circumstances, checks may be made on a post-audit basis.

IBIS checks shall be made in accordance with existing DHS instructions and Chapter 10.3 of this field manual.

(3) Application Review. The adjudicating officer should review the following areas to determine if the applicant is eligible for a travel document.

(A) Adjustment of Status Eligibility. When an applicant seeks advance parole while a Form I 485 is pending, prima facie eligibility for adjustment is a significant favorable factor in determining whether granting advance parole is appropriate, as a matter of discretion. Inadmissibility under section 212(a)(9)(B) or (C) does not necessarily preclude a grant of advance parole, and aliens may also qualify for relief from inadmissibility. The instructions for Form I 485 and Form I 131 advise applicants about the risks of traveling, if one has accrued unlawful presence. The standard Form I 512 and the notice that accompanies the issuance of the AP EAD also provide this information. And aliens may qualify for relief from inadmissibility.

(B) Identity Verification. The applicant's identity must be verified by comparing the information submitted on the application or the biometrics taken at the Application Support Center (ASC) with the information contained in the USCIS record and evidence submitted with Form I 765, such as photographic identification.

(C) Applicants in Removal Proceedings. The adjudicator must review the application and the applicant's A file and conduct appropriate system checks to ensure the applicant is not in removal proceedings, as this may affect eligibility and jurisdiction. If an adjustment applicant in removal proceedings departs from the United States, he or she abandons the application, even if he or she first obtains advance parole.

USCIS will not issue an advance parole document if the applicant is in exclusion, deportation, removal, or rescission proceedings. If there are compelling circumstances in those cases, the request for advance parole must be addressed to Immigration and Customs Enforcement.

(D) Expedited Processing Requests.

(i) Applicant Makes Request. If an applicant who has filed Forms I 765 and I 131 concurrently with Form I 485 determines that he or she must travel before his or her Form I 131 can be adjudicated within normal processing times, he or she should contact the USCIS Contact Center or visit his or her local field office by scheduling an InfoPass appointment to request expedited processing as follows:

If the applicant makes an appointment at a field office, that office will determine whether the applicant has been to an Application Support Center (ASC) and, if not, schedule a walk in appointment. In addition, the field office will notify the service center or National Benefits Center ("center") where the Form I 131 is pending that the applicant requested expedited handling. If the Field Office Director grants the request, he or she will inform the center that he or she has authorized expedited handling of the application and that the requisite biometrics have been captured. (Note: See the USCIS website for the criteria to apply when considering expedite requests.)

If the applicant contacts the USCIS Contact Center, that office will take a "service request" and forward the expedite request to the center having jurisdiction over the application. If the center determines that adjudication of the application should be expedited, it will determine whether the applicant has already been to the ASC for biometric collection and, if not, schedule a walk in appointment.

If the applicant both contacts the USCIS Contact Center and makes an appointment at a field office, each inquiry will be processed as described above.

Once the biometric-collection requirements have been met, the center will determine whether both applications are ripe for adjudication, or if only the Form I 131 is ripe for adjudication.

(ii) If Both Forms I-765 and I-131 are Ripe for Adjudication. If both forms can be adjudicated without delaying the adjudication of the advance parole request and, if approved, issuance of the advance parole document, the center should adjudicate both simultaneously. If both applications are approved, the center will determine whether sufficient time remains before the applicant's departure to prepare the advance parole EAD and mail it to the applicant. If so, the center should do so as expeditiously as possible.

If applicant's date of departure is within 48 hours, the center should:

Contact the local office most convenient to the applicant and have that local office:

Issue a single entry Form I 512 valid only for the length of time needed for the applicant to complete the purpose of his or her trip abroad; and

Arrange for the applicant to pick up that Form I 512 at the local office.

Then proceed to adjudicate the Form I 765 in the normal course of business (e.g., without expeditious handling) and if the Form I 765 is approved, generate an advance parole EAD and mail it to the applicant. The advance parole EAD should be issued even if the applicant's single entry Form I 512 has not yet expired.

(iii) If Only Form I-131 is Ripe for Adjudication. If only the Form I 131 is ripe for adjudication, the center should adjudicate it. If the advance parole request is granted and time allows, the center should issue it on Form I 512 and mail it to the applicant. If time does not permit this, the center should arrange with the appropriate local office for issuance of a single entry Form I 512 valid only for the length of time needed

for the applicant to complete the purpose of his or her trip abroad and in person pickup of the form at the local office. As in the earlier scenario, the center should then proceed to adjudicate the Form I 765 in the normal course of business (e.g., without expedited handling) and if the center grants the Form I 765, generate an advance parole EAD and mail it to the applicant. The advance parole EAD should be issued even if the applicant's single entry Form I 512 has not yet expired.

(4) <u>Supporting Documentation</u>. Pursuant to I-131 instructions, the alien should have attached a copy of any document showing present status, and an explanation or other evidence demonstrating the circumstances that would warrant issuance of the advance parole.

An adjustment applicant should attach a copy of the filing receipt for that application.

If traveling to apply for an immigrant visa, a copy of the consular appointment should be attached.

Care must be taken to assess credibility of evidence. Evidence of a death or serious illness of a relative in a foreign country should be verified, if questions exist about the credibility of the evidence. Documents transmitted on facsimile machines should be examined closely, with special attention given to the phone number of the transmitter. A phone number on a faxed document gives the area code from which the transmission was made. A missing phone number on a faxed document may mean that the purported transmission from overseas was, in reality, from an acquaintance elsewhere. Documentation from medical authority should be examined for merit. A good medical dictionary (such as <u>Taber's Cyclopedic Medical Dictionary</u> ) can be invaluable in deciphering what medical language really means.

(5) <u>Abandonment of Application</u>. The application is considered abandoned if either:

The alien applied for admission at a port of entry prior to the decision on a Form I-131 filed on behalf of an alien who was outside the U.S. at time of filing, or

The alien departed from the U.S. prior to the decision on the Form I-131 in a case where the alien applied for advance parole in order to depart from and return to the U.S.

| **Note** |
| --- |
| If the alien is an applicant for adjustment of status, departure prior to the approval of the Form I-131 also results in the adjustment application being deemed abandoned. |

(e) <u>Cases Where a Form I-765 Based on (c)(9) or (c)(16) Eligibility Category Has Been Filed Concurrently with Form I-131.</u> If an adjudicator approves an application for employment authorization based upon a pending application for a Form I-485, then the adjudicator may also find that there is sufficient justification for approving the application for advance parole. In this instance, an advance parole Employment Authorization Document (EAD) will be issued on a single Form I-766 card.

Cases may arise where one application is approved and the other one is denied.

(f) Closing Action.

(1) Approval. The adjudicator must check either Single Advance Parole or Multiple Advance Parole, on Form I-131, and indicate the validity of the document. DHS normally grants a 1-year, multiple entry advance parole to any alien applying based on a pending I-485. The action block of Form I-131 must be endorsed. Approval under class (1) shall require return within four months of the date of approval, except that the return of an alien who will be abroad in connection with his qualifying profession or occupation shall be required within the time needed for such purpose, not to exceed one year from the date of issuance of the parole authorization. For approvals under class (5), a reasonable and appropriate period of time should be allowed for the necessary travel, consistent with the purpose of the emergent or humanitarian factors considered in authorizing the parole.

Authority to issue Form I-512 shall not be redelegated below the level of assistant district director for examinations. Therefore, Form I-512 must be prepared for the signature authority of an officer at that level (or higher).

(2) Production and Delivery. If advance parole is approved, Form I-512 is issued. (For paroles approved at ports of entry, Form I-512 is not issued.) In preparing the Form I-512, pay particular attention to the following:

The Remarks block of Form I-512 shall show the basis for parole.

For I-512's issued by district offices, the alien's photograph must be affixed to the original and file copies of Form I-512. For single entry documents, the second "alien" copy shall be destroyed. For multiple entry I-512's, pictures must be affixed to both "alien" copies of the I-512, as one will be kept by the first port of entry and the second "alien" copy will be retained by the alien for future travel. If a multiple entry document is requested, an additional picture is required (in addition to the two pictures specified on I-131 instructions).

Forms I-512 shall be impressed with the DHS masceration die so that the stamp is partly on the alien's photograph. (If an office has not yet received a DHS masceration die stamp, the INS masceration die stamp should be used.)

(3) Denial. When Form I-131 is denied, a written explanation of the reasons for the denial must be furnished to the applicant. (See 8 CFR 103.3(a)(1)(i) ). The written denial must indicate specifically why parole is denied. There is no appeal from a decision to grant or deny a request for advance parole, subject to possible judicial review of the refusal. See paragraph (g).

(g) Termination of Advance Parole. If it is determined (subsequent to issuance but prior to the alien's arrival) that an advance parole should not have been authorized, issue a USCIS Motion to Reopen or USCIS Motion to Reconsider the decision and a formal order denying the reopened application. The order should direct the alien to not use the Form I-512 and to immediately return it to DHS. An IBIS lookout should also be posted (see Chapter 31.5 of the *Inspector's Field Manual*).

After an alien's arrival, an advance parole may be terminated just like any other parole. See Chapter 16.1 of the *Inspector's Field Manual*.


(h) Judicial Review. As noted, whether to grant advance parole is a matter entrusted to DHS discretion. Under section 242(a)(2)(B)(ii) of the Act, no court has jurisdiction to review a decision that is entrusted to DHS discretion. It is likely, however, that many courts will read section 242(a)(2)(B)(ii) of the Act narrowly, and hold that they still have jurisdiction to ensure that DHS actually did exercise discretion in denying advance parole. See, e.g., Montero-Martinez v. Ashcroft, 277 F.3d 1137 (9th Cir. 2002) (restriction on review of discretionary decisions limited only to the actual exercise of discretion, and not to the issue of the alien's eligibility for the benefit). An alien may still be able to challenge a denial of advance parole, therefore, on the ground that DHS did not consider the actual facts of the alien's individual case, and exercise discretion on the basis of those facts. See Jean v. Nelson, 472 U.S. 846, 857 (1985). The unfavorable exercise of discretion is proper so long as the written decision sets out a "facially legitimate and bona fide reason" for the denial. See Kleindienst v. Mandel, 408 U.S. 753, 769 (1972). For example, if the evidence shows that the alien would not be eligible for a benefit that he or she seeks to pursue after returning under a grant of advance parole, that ineligibility would likely be a sufficient basis for denying advance parole. See Massoud v. Attorney General, 459 F. Supp. 672, 675 (W.D.Mo. 1978). To ensure that this rationale, or any other rationale, will withstand judicial scrutiny, however, the DHS officer must set forth the relevant facts of the case and the actual reason(s) for the decision not to grant advance parole.

**54.4 Special Considerations.**

(a) <u>General.</u>

Adjudicators must remain informed of the special circumstances set forth in cables, memoranda, and regulations which authorize the issuance of advance parole by district directors. The general guideline of the person being within the district director's geographical jurisdiction remains in effect. These special circumstances include:

(1) <u>Legalization/SAW Applicants.</u>

The issuance of Form I-512 to aliens with legalization/SAW applications pending was first authorized in 1987. Generally, authorization for advance parole should be limited to 30 days. Otherwise, a grant of advance parole and issuance of Form I-512 is subject to the normal restrictions. There is no requirement that the beneficiary be legally in the U.S. Issuance of Form I-512 to class members under legalization litigation cases should be handled on a case-by-case basis by the district director having jurisdiction over the applicant's place of residence. One consideration that may be given is whether the applicant has demonstrated prima-facie eligibility for the legalization/SAW benefit sought. Reference to LAPS codes will show whether the alien demonstrated prima-facie eligibility at the time the application for legalization/SAW was filed.

(2) <u>Advance Parole for Aliens with U.S. Visa Interviews Scheduled in Third Countries.</u>

CO 212.28-P, dated February 20, 1987, is quoted in its entirety:

There are certain aliens residing in the U.S. who are eligible for visa issuance but ineligible for adjustment of status under Section 245 of the Immigration and Nationality Act, and are also ineligible for the Stateside Criteria program. In these cases they may have their immigrant visas issued in third countries if the State Department has determined that they are unable to return to their country of citizenship for such issuance. However, some countries in which this visa issuance will take place will not allow interviewees to enter unless they are in possession of a document (advance parole letter) which will ensure they will be readmitted to the U.S. in the event that they are not given the visa.

To ensure this population is given the opportunity to pursue acquisition of the visa, district directors should authorize advance parole in all cases except where the individual is in deportation proceedings or is an exchange alien subject to the foreign residence requirement and is not the beneficiary of a private bill.

In addition to proof that the interview has been scheduled, district directors may require that prospective interviewees provide proof that the foreign country to which they have been invited will not permit entry without a valid document. In instances where further assurance of admissibility back into the U.S. seems warranted, district directors may require that the G-325 and fingerprint check be completed before issuing advance parole.

This benefit should be extended to those with and without travel documents.

Normally, submission of Form I-131, with a copy of the interview notice from the American consulate will be sufficient. Forms G-325A and FD-258 should be requested, if there is no evidence in the person's A-file of record checks having been done. If there is a question about the foreign country requiring a travel document, proof can be requested from the applicant. The adjudicator's personal knowledge that a travel document is or is not required by countries such as Canada, Mexico, or the United Kingdom will suffice in most cases.

(3) Temporary Protected Status and Deferred Enforced Departure.

After a grant of Temporary Protected Status (TPS) or Deferred Enforced Departure (DED), an alien may be granted permission to travel by the director pursuant to DHS's advance parole provisions.

(A) TPS Advance Parole Procedures.

If a charging document has been issued, but not yet filed, a TPS registrant may be given permission to travel if the charging document is cancelled first. If the charging document has already been filed with the immigration court, proceedings would have to be terminated first in order for the district to issue the travel document. If the court does not agree to cancel the proceedings, jurisdiction over the advance parole request rests with Parole Unit at the Headquarters Office of International Affairs.

**Note:**

If the charging document is cancelled, it should be reissued upon the registrant's return to the U.S.; if proceedings are terminated, they should be reinstated upon the alien's return to the U.S. This should be noted on the I-512 in language similar to the following:

Permission to travel authorized for TPS registrant. Subject will be allowed to reenter as "TPS" with stay granted to (the expiration of the authorized period). Charging document is to be re-issued upon return to the U.S.

In addition, consistent with section 304(c) of Public Law 102-232, as amended, all TPS registrants granted permission to travel shall also have their I-512's noted that re-entry as "TPS" is authorized. The statute did not require advance parole, but merely permission to travel. This is accomplished through use of the I-512 with fee. These individuals are then subject to removal proceedings as a deportable alien and as an inadmissible alien.

Once satisfied that the person is entitled to parole, Inspectors should endorse the I-94 with the parole stamp, indicate in the appropriate block the basis of parole (i.e., "I-512, TPS beneficiary"), the date to which paroled, the date of action, port and stamp number. Similarly, Inspectors should endorse the action block on the I-512 and the alien's passport. If the I-512 is valid for a single entry, it should be collected and forwarded to the file control office where the advance parole was issued. If the I-512 is valid for multiple entries, it should be returned to the applicant, after a photocopy is made for forwarding to the issuing office.

See **8 CFR 244.15.** See also the HQOPRD cable dated April 10, 1992, "Permission for TPS Registrant to Travel."

(B) <u>DED Advance Parole Procedures.</u>

Once satisfied that the person is entitled to parole, Inspectors should endorse the I-94 with the parole stamp, indicate in the appropriate block the basis of parole (i.e., "I-512, DED beneficiary"), the date to which paroled, the date of action, port and stamp number. Similarly, Inspectors should endorse the action block on the I-512 and the alien's passport. If the I-512 is valid for a single entry, it should be collected and forwarded to the file control office where the advance parole was issued. If the I-512 is valid for multiple entries, it should be returned to the applicant, after a photocopy is made for forwarding to the issuing office.

(4) <u>Entry of Canadians for Treatment of Chemical Dependency.</u>

As a courtesy to Canadian citizens seeking entry into the U.S. for treatment of chemical dependency, an expedited 212(d)(3) waiver program has been initiated along the Canadian border for persons inadmissible under the Act as aliens who are narcotic drug addicts/abusers or alcoholics. This program was intended to assist individuals seeking immediate treatment not available in Canada. This treatment was to be on an inpatient basis only, thereby minimizing the risk to the general population.

IMMACT 90 redefined health-related exclusion (inadmissibility) provisions to include drug abusers as well as drug addicts. It also defined alcoholism as a mental/physical disorder. Individuals who are drug abusers or addicts are clearly inadmissible under the Act. Individuals who are seeking chemical dependency treatment for alcoholism at facilities in the U.S. should be considered inadmissible based upon the diagnosis of the referring medical center or physician. The diagnosis is required to establish grounds of inadmissibility.

Aliens inadmissible solely under Section 212(a)(1)(A)(ii) or (iii) may file an application to waive that ground of inadmissibility at the Port-of-Entry in conjunction with their application for admission. For those applicants whose waiver application would be denied because of a recent criminal history, the district director may authorize parole if the applicant poses no danger to society and is in need of treatment that can only be provided in the U.S. Aliens convicted of violent crimes or considered to be aggravated felons are not eligible for parole.

Requests for parole must be adjudicated on a case-by-case basis, adhering to the following conditions:

(A) Evidence must be presented that shows the applicant has been accepted into an inpatient chemical dependency/alcohol program at a facility in the U.S. accredited by the Joint Commission of Accreditation of Health Care Organizations, and licensed and approved under applicable state and Federal regulations, and that such facility does not have a waiting list of prospective American patients.

(B) Evidence that the Canadian Ministry of Health (CMH) has approved the Canadian applicant's enrollment into the treatment program and will fund the costs of the applicant's care.

(C) Evidence that the applicant has voluntarily committed himself or herself to the facility for the purpose of such treatment and has signed a consent form which allows the facility to provide the DHS with information regarding the date inpatient treatment is completed.

(D) A statement from the facility that the Canadian applicant will be accompanied by a staff counselor from the port of entry to the treatment facility, and, upon termination of completion of treatment, will be accompanied back to the port of entry at which application for parole was made for departure verification.

(E) Immediate telephonic notification to the DHS office with jurisdiction over the location of the facility is required when any applicant absconds from the program and has disappeared from the facility. The health facility will be required to submit an explicit and comprehensive report on every Canadian applicant who has absconded from the program or has had behavioral problems while being treated in the U.S.

(F) Parole is to be authorized for up to a maximum period of 6 months depending on the normal length of treatment presented in the request. All parole decisions will be under the exclusive authority of the district director who is adjudicating the waiver request.

(G) If DHS determines that an inordinate number of parolees are terminating their treatment at a particular facility, that facility will lose the privilege of participating in this program.

(H) Finally, if DHS determines that the number of criminal alien parolees who have not completed treatment and have not returned to Canada has reached a level where it is obvious the parole initiative is not working as it was intended, DHS will terminate the parole portion of this program. Entry of Canadians for Treatment of Chemical Dependency, HQ 235-P, dated February 23, 1993.